

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Bert Ford, Administrator
Texas Liquor Control Board
Austin, Texas

Dear Sir:

Opinion No. 0-3065
Re: Authority of O. P. A. to
impose price ceiling regu-
lations on sales of contra-
band by the Texas Liquor
Control Board, and other
related questions.

By letter dated February 23, 1943, you requested the opinion of this department as to whether the Office of Price Administration, a Federal administrative agency, may impose price ceilings upon the Texas Liquor Control Board, in regulation of sales by the Board of contraband liquor under section 30, Article I, of the Texas Liquor Control Act. Other matters included in your request are as follows:

"We should also like to know whether, as a matter of State law or as a matter of general public policy, the Board could do otherwise than offer this liquor for competitive bidding and accept the maximum amount offered in any given instance.

"Since the law likewise provides for the selling of liquor at Sheriff's sales, we should also like to know what effect ceiling price regulations would have upon the Sheriff of any county in determining whether bids for liquor should be accepted or rejected."

## STATE STATUTORY AUTHORITY FOR
### CONTRABAND SALES

Section 30, Article I, of the Texas Liquor Control Act provides for alternative methods of sale of contraband

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

seized under the Act. It may be sold at public auction by the Sheriff of the county of seizure, or it may be concentrated by the Board at any place within the state deemed most advantageous and sold at "either public or private sale". Even where sale is at public auction by the Sheriff, the Board may reject the bid and resell under the authority given, or it has authority to bid at the sale and take delivery for the purpose of resale, after paying expenses of the sale. Manifestly the policy of this statute is to secure to the state the highest possible price for this contraband and it must be conceded that if the O. P. A. may, by regulation, impose price ceilings on such sales, these regulations will be in conflict with the state's statutes.

## FEDERAL STATUTORY AUTHORITY
## FOR PRICE CONTROL

The emergency price control act of 1942, (Act of January 30, 1943, sec. 26, 56 Stat. 23) is a war measure and its purposes, among others, are stated in this language:

"It is hereby declared to be in the interest of the national defense and security and necessary to the effective prosecution of the present war, and the purposes of this act are, to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; . . ." 50 U. S. C. A. app., sec. 901(a).

The act creates an Office of Price Administration, "which shall be under the direction of a Price Administrator". 50 U. S. C. A., app., sec. 921. It is further provided, as follows:

"Whenever in the judgment of the Price Administrator (provided for in section 201 (section 921 of this appendix)) the price or prices of a commodity or commodities have risen or threatened to rise to an extent or in a manner inconsistent with the purposes of this act, he may by regulation or order establish such maximum price or maximum prices as in his judgment will be generally fair and equitable and will effectuate the purposes of this act." 50 U. S. C. A. app., sec. 902(e).

This same section of the act sets up certain broad legislative standards or guides to be followed by the Administrator in establishing maximum prices. Section 904(a),

Honorable Bert Ford, Administrator, Page 3

(U. S. C. A.) contains these prohibitions:

"It shall be unlawful, regardless of any con-
tract, agreement, lease or other obligation here-
tofore or hereafter entered into, for any person
to sell or deliver any commodity, or in the course
of trade or business to buy or receive any commodi-
ty, or to demand or receive any rent for any defense
area housing accommodations, or otherwise to do or
omit to do any act in violation of any regulation
or order under section 2 (section 902 of this appen-
dix), . . . ."

## PRICE CONTROL AS EXERCISE OF "WAR POWERS"

That price control legislation is a proper exer-
cise of Federal authority under the "war powers" of Congress,
seems to be well established. Highland v. Russell Car & Snow-
plow Co., 279 U. S. 253, 49 S. Ct. 314. In such an emergency,
"the power is not limited to victories in the field and the
dispersion of the insurgent forces. It carries with it in-
herently the power to guard against the immediate renewal of
the conflict and to remedy the evils which have arisen from
its rise and progress". Alexander T. Stewart et al. v. S.
Bloom et al., 11 Wall. 493, 20 L. Ed. 176.

## SUPREMACY OF FEDERAL AUTHORITY IN DELEGATED FIELD

It is well settled that where Federal authority,
exercised in a delegated field, conflicts with the laws of the
state, the latter must yield and the Federal authority is su-
preme. State of Florida v. Mellon, Secretary of the Treasury,
et al., 273 U. S. 12, 47 S. Ct. 265. As it was said in the
case of Helena Rubinstein, Inc., v. Charlines Cut-Rate, Inc.,
132 N. J. Eq. 254, 28 Atl. (2) 113, where the court had under
consideration a conflict between the "emergency price control
act of 1942" and the state's "fair trade act", "the authority
of the Federal Government is supreme with respect to matters
which are delegated to it by the Federal Constitution even
though the exercise of such authority may interfere with the
effective application of the laws of a state".

## APPLICATION OF EMERGENCY PRICE CONTROL ACT TO STATE AND ITS AGENCIES

The emergency price control act provides that it
shall be unlawful for "any person" to violate regulations

Honorable Bert Ford, Administrator, Page 4

issued thereunder. 50 U. S. C. A. app. 904. There is respectable authority to the effect that ordinarily the language "any person", when used in a statute, does not apply to and include a state in the absence of specific wording indicating such an intention by the Legislature. Lowenstein v. Evans et al., 69 Fed. 908; Ann. Cas.1912a. 1214; 59 C. J. 1103, sec. 653; 25 S. C. L. 784. However, recent cases by the Supreme Court of the United States have approved a much broader construction of that term. In U. S. v. Cooper Corporation, 312 U. S. 600, 61 S. Ct. 742, it is said:

> "Since, in common usage, the term 'person' does not include the sovereign, statutes employing the phrase are ordinarily construed to exclude it. But there is no hard and fast rule of exclusion. The purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute are aids to construction which may indicate an intent, by the use of the term, to bring state or nation within the scope of the law." See also State of Georgia v. Evans et al., 316 U. S. 159, 62 S. Ct. 972; State of Ohio v. Helvering et al., 292 U. S. 360, 54 S. Ct. 725.

It may be noted that under section 20(1), definitions and explanations, general maximum price regulation, issued by the Price Administrator on April 28, 1942, pursuant to authority given him by the emergency price control act, that this definition is found.

> "Person includes an individual, corporation, partnership, association, any other organized group of persons, legal successor or representative of any of the foregoing, and includes the United States, any agency thereof, any other government, or any of its political subdivisions, and any agency of any of the foregoing."

## CONCLUSIONS

With the declared purpose and background of the emergency price control act of 1942 in mind, it is our opinion that the language, "any person", as used in the act (50 U. S. C. A. app. sec. 904) applies to the state and its agencies and that the Price Administrator acting under the authority thereof may issue orders imposing maximum price ceilings,

Honorable Bert Ford, Administrator, Page 5

which apply to sales of contraband under the Texas Liquor Control Act. The exercise of such broad powers by an administrator within general limitations imposed by Congress has been recently upheld by the Supreme Court of the United States. Opp Cotton Mills, Inc., v. Administrator, 312 U. S. 126, 61 S. Ct. 524.

Other inquiries included in your request, relating to the particular effect Federal regulations would have on the manner of sale under the Texas Liquor Control Act, we deem it inadvisable to answer. Federal administrative regulations provide a flexible system of government, subject to modification, exception, retraction, and innovation from day to day. As our statute allows the Board to make "private sale" of contraband, it is not improbable that a sales practice may be devised by the Board in consultation with the Federal agency, which will insure the highest possible price for the state which is consistent with Federal regulations and which will, at the same time, comply with the provisions of the Texas Liquor Control Act.

We trust that the foregoing sufficiently answers your inquiry.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Wm. J. Fanning_

Wm. J. Fanning
Assistant

By _Eugene Alvis_

Eugene Alvis

APPROVED MAR 19, 1943

ASSISTANT
ATTORNEY GENERAL

EA:mp



APPROVED OPINION COMMITTEE BY BWB CHAIRMAN